IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LASHAUN CASEY,**

    **Plaintiff,**

v.                                               **Civil Action No. 2:16cv94**
                                                           **(Judge Bailey)**

**J. THOMPSON,[1] Counselor of D-2 Unit,
Hazelton U.S.P.,**

    **Defendant.**

### REPORT AND RECOMMENDATION

### I. Procedural History

On November 9, 2016, Lashaun Casey ("Plaintiff"), an inmate then-incarcerated at USP Lewisburg in Lewisburg, Pennsylvania,[2] initiated this *pro se* civil rights action by filing a Bivens[3] complaint against the above-named Defendant.[4] ECF No. 1. Along with his complaint, Plaintiff filed a motion to proceed *in forma pauperis* ("IFP") and supporting documents. ECF Nos. 2, 3, & 4. Plaintiff also filed a motion for appointment of counsel. ECF No. 5. By separate Orders entered on November 14, 2016, Plaintiff's motion for appointed counsel was denied and he was granted permission to proceed as a pauper, but directed to pay an initial partial filing fee ("IPFF"). ECF Nos. 7 & 8.

On November 28, 2016, Plaintiff paid his IPFF. ECF No. 12. On December 13, 2016, the undersigned conducted a preliminary review of the file, determined that summary dismissal was

---

[1] Defendant has identified her full name as Jackoline Snoderly (née Jackoline Thompson). See ECF No. 24, fn 1 at 2. The Clerk of Court will be directed to correct her name on the docket.

[2] Plaintiff is now incarcerated at USP Big Sandy in Inez, Kentucky.

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[4] Plaintiff filed another Bivens action the same day, also alleging interference with his legal mail, but on a different day, by a different individual, and under different facts than alleged in this case. See Case No. 3:16cv154.

not appropriate, and directed the United States Marshal Service to serve the complaint. Accordingly, an order to answer was entered. ECF No. 14.

The Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support on February 2, 2017. ECF Nos. 23 & 24. On February 7, 2017, because Plaintiff was proceeding *pro se,* the Court issued a Roseboro Notice. ECF No. 26. On March 6, 2017, Plaintiff filed a motion seeking a directive from the court ordering the Defendant to re-send him a copy of her dispositive motion and for an extension of time in which to respond to it. ECF No. 32. By Order entered March 14, 2017, Plaintiff's motion was granted; the Defendant was directed to re-send a copy of her dispositive motion to Plaintiff via certified mail, return receipt requested, and to file proof of the same with the court; Plaintiff was granted twenty-one days from the date the mailing was received. ECF No. 33.

On March 14, 2017, the Defendant filed a certificate of service, showing that the second copy of the dispositive motion was re-sent to Plaintiff that day via certified mail. ECF No. 34. On March 21, 2017, the Defendants filed a copy of the certified mail return receipt, showing that delivery of the second copy of the dispositive motion was accepted at USP Big Sandy on Plaintiff's behalf on an unspecified date. ECF No. 37. Plaintiff filed his response in opposition on March 27, 2017. ECF No. 38. Plaintiff filed a duplicate copy of his response in opposition on March 28, 2017. ECF No. 39.

This case is before the undersigned for a Report and Recommendation ("R&R") on Defendant's dispositive motion.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, Plaintiff raises a claim of "deliberate indifference" to his legal mail. ECF No. 1-2 at 7. He contends that on December 9, 2014, at approximately 2:20pm, Defendant intentionally interfered with his legal mail, when she arrived at his Special Housing Unit ("SHU") cell with a letter from "Joannie Plaza," his lawyer, a federal public defender from the District of Puerto Rico. Id. at 3. He contends that Defendant opened the letter in his presence, and then "knowingly and intentionally started to read" it. Id. Thereafter, he contends that Defendant took the letter away, saying that because the letter was in Spanish, she had to take it to review it, and that she had 24 hours to do so. Id. at 4. Plaintiff alleges that the envelope was clearly stamped "Legal Mail" with his attorney's name and address at the bottom left corner.[5] Id. He contends the letter was never given to him within 24 hours as required, and that as of the time he filed his complaint, he had yet to ever receive the letter. Id. Further, he asserts that each time Defendant walks past his cell on her weekly rounds, he asks her for his legal letter and she either responds saying she does not know where it is, or does not respond at all. Id. at 4 – 5. Plaintiff contends that the camera on the unit would support his claims, as would his cellmate, who witnessed the alleged acts; he attaches an affidavit from this inmate.[6] Id. at 5; see also ECF No. 1-3. He contends that Defendant's actions violated Bureau of Prisons ("BOP") Program Statement 5265.11 and BOP rules and regulations, which state that legal mail must be opened in an inmate's presence only to check for the presence of contraband, not to be copied or read. Id. at 8. Therefore, he alleges that Defendant violated his First, Fifth, and Sixth Amendment rights, invaded his legal privacy; and caused him to suffer psychological injury, including depression. Id. at 8 – 10.

---

[5] Plaintiff contends that the return address on the letter was Joannie Plaza, "Federal Public [D]efender, District of Puerto Rico, 241 F.D. Roosevelt Av[e], San Juan, Puerto Rico 00918." ECF No. 1-2, ¶ 15 at 4.

[6] The attached affidavit supports the facts alleged in Plaintiff's other Bivens action; it does not support the facts alleged in this action.

3

Regarding whether he exhausted his administrative remedies regarding the claims in his complaint, Plaintiff asserts that he filed a "Level 1" form by handing it to administrative personnel, Case Manager Krattic ("Krattic"), from his unit team on December 17, 2014; and Krattic assured him he would submit it that day. ECF No. 1-2 at 5. He contends he did not receive a response within 20 days, so on January 13, 2015, he filed an appeal to the next level. Id. at 7. He states that he got a January 23, 2015 response denying the grievance, and so on February 5, 2015, he filed a Level 3 grievance, which was denied on April 8, 2015. Id. He attaches copies of his grievances. See ECF No. 1-7 at 5 – 20.

As relief, he requests injunctive relief in the form of a declaration that the acts and omissions described in his complaint violated his constitutional rights; a preliminary and permanent injunction directing that the Defendant be removed from her position as counselor; compensatory damages of $100,000.00 against defendant "jointly and severally;" punitive damages of $100,000.00; all costs; and a jury trial. ECF No. 1-2 at 10 – 11.

**B. Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

Defendant's version of the facts is that she brought Plaintiff his letter, the envelope of which was marked as legal mail, purporting to be from a courthouse in Puerto Rico; per BOP Program Statement 5800.16, she opened it in his presence to do a cursory contraband search; however, inside was a handwritten letter which "included a salutation with the letters X and O's." Id. at 2 – 3. Because the letter was in Spanish, she could not read it. Id. at 3. Because it appeared to be a personal letter instead of legal mail, she returned the letter to the mailroom for its review and appropriate action; and she never had any further involvement with the letter. Id. Defendant attaches her sworn declaration, attesting to the same. See ECF No. 24-2.

Defendant argues that the complaint should be dismissed or summary judgment be granted in her favor because:

1) Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 24 at 3.

2) Inadvertent or negligent mishandling of mail does not state a Constitutional violation. Id. at 5.

3) Plaintiff has not shown an actual injury, thus his claim must be dismissed. Id. at 6.

4) An alleged violation of BOP policy, even if true, does not give rise to a Constitutional violation [id. at 7]; and

5) Defendant is entitled to qualified immunity. Id. at 8.

The Defendant also attaches an affidavit from Howard Williams, Legal Assistant and Administrative Remedy Clerk at the BOP's Mid-Atlantic Regional Office ("Williams Decl."), in support of her claim that Plaintiff never filed an administrative remedy at the institution level regarding his claim of interference with his legal mail. See ECF No. 24-1, ¶ 5 at 3.

## C. Plaintiff's Response

Plaintiff reiterates his arguments and attempts to refute the Defendant's on the same. He contends that he did exhaust his available administrative remedies, but that the Defendant "refused to provide . . . [him] with an informal resolution so that he could properly begin" the administrative remedy process, knowing "that all subsequent submissions would be inadequate without a properly filed informal resolution." ECF No. 38 at 2 – 3. Further, he contends that he did suffer an actual injury as a result of the interference with his legal mail, because he suffered a denial of his direct appeal, then-pending in the First Circuit Court of Appeals. Id. at 3. He contends that he never did receive the legal correspondence from his lawyer and that this "prejudiced him on his direct appeal from his criminal conviction." Id. at 4. Further, he argues that the Defendant is not entitled to qualified immunity. Id. Finally, he contends that there "has

5

been a pattern" of his legal mail being deliberately withheld; he references his other pending suit on the issue and urges that the two cases be consolidated. Id.

### III. Standard of Review

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated

7

into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

### III. Analysis

**Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"3 and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper

exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[7] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

---

[7] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Under §1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, despite the complaint's detailed documentation regarding Plaintiff's efforts to administratively exhaust his claims, Plaintiff's complaint nonetheless implicitly admits that he did not *fully* exhaust his grievances before filing suit. Plaintiff only avers that his grievances were denied; he does not address the fact that they were rejected because he never filed a grievance at the institution level, despite being repeatedly instructed to do so.

The Defendant argues that there is no record of Plaintiff ever having submitted an informal request to staff (BP-8) as required under 28 C.F.R. § 542.10 *et seq.* and Plaintiff has not attached any copy of the same with his complaint. ECF No. 24 at 4. Although Plaintiff alleges he filed a BP-9 at the institution level, a review of the SENTRY Administrative remedy retrieval shows no remedy regarding legal mail ever having been filed at the institution level. Id.; see also Williams Decl., ECF No. 24-1 at 24-1 at 3. When the Plaintiff filed at the Regional and Central

Office levels, his administrative remedy was rejected, and he was told he must file a BP-9 with the institution first before filing his appeal. See ECF No. 1-7 at 12 and 4. He did not follow the specific instructions spelled out on the rejections, and therefore did not properly exhaust his administrative remedies.

In his response in opposition, Plaintiff relies on Ross v. Blake , *supra*, for the proposition that he exhausted all of the administrative remedies that were *available* to him. For the first time, he asserts that the Defendant, the counselor of his unit at USP Hazelton, "refused to provide . . . [him] with an informal resolution so that he could properly begin" the administrative remedy process. ECF No. 38 at 2. He avers that because Defendant is both the person he is filing suit against and the person he would have had to obtain the informal resolution from, "it reasonably follows that she would attempt to thwart the administrative remedy process." Id. He impliedly suggests that Defendant deliberately refused to give him an informal resolution, knowing "that all subsequent submissions would be inadequate without a properly filed informal resolution." Id. at 2 – 3.

A careful review of the record supports the Defendant's position. An inmate must first request an informal resolution by presenting an issue of concern informally to a staff member. Title 28 C.F.R.§542.13(a). If the informal resolution fails, or if an inmate is dissatisfied with the informal response, or if there is *no* response, the inmate may then submit a Request for Administrative Remedy, in the form of a formal written complaint, on the proper form (a BP-9) to the Warden of the institution within twenty (20) calendar days of the date of the incident upon which the complaint is based. Title 28 C.F.R. § 542.14(a). This Plaintiff did not do. The January 23, 2015 Rejection Notice for Remedy ID No. 808131-R1,[8] sent in response to

---

[8] Within the BOP record-keeping system, each administrative remedy request is assigned a six-digit numerical ID or case number, as well as an alpha-numeric suffix. The alpha-numeric suffix identifies the specific level in the

Plaintiff's January 13, 2015 grievance, clearly states "this Regional appeal is being rejected and returned to you. You should include a copy of this notice with any future correspondence regarding the rejections. . . . You must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level." ECF No. 1-7 at 12. Nonetheless, instead of correcting his error and beginning again, Plaintiff disregarded the instruction and proceeded to file his February 5, 2015 appeal at the next level. Id. at 5. The April 8, 2015 Rejection Notice for Remedy ID No. 808131-A1 gave three reasons for the grievance being rejected and returned to him: 1) Concur with rationale of regional office and/or institution for rejection. Follow directions provided on prior rejection notices. 2) You submitted your request or appeal to the wrong level. You should have filed at the institution, regional office, or central office level. 3) You must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level. ECF No. Id. at 4.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th

---

administrative review process. Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. Furthermore, at each level, the letter is followed by a number, for example, "F1," which indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and refiles the appeal at that level, the suffix would be "F2."

Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d at 725.

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, it is apparent from the record that Plaintiff's failure to exhaust was due to his own actions in not following the directions given in the rejection notices. While Plaintiff does finally allege for the first time in his response in opposition to Defendant's dispositive motion that Defendant "refused" to give him a BP-8 informal resolution, he gives no details on how such a refusal occurred. Moreover, if such refusal actually had indeed occurred, Plaintiff could have raised it as a defense in his appeals of the rejection notices he repeatedly received for that very issue. Instead, when he was notified that his grievances were being rejected, he remained silent on the issue, never alleged that Defendant had denied him a BP-8, and did nothing to pursue any

13

recourse for Defendant's alleged denial of the same. Further, Plaintiff's bare, eleventh hour claim that Defendant denied him a BP-8 still does not explain or excuse his failure to file his BP-9 at the institution level.

Accordingly, the undersigned finds Plaintiff's bare allegation that Defendant refused to provide a BP-8 lacks credibility. Plaintiff makes no claim that Defendant or any other prison official ever threatened him with violence to discourage him from filing grievances. Accordingly, consistent with Custis v. Davis, Plaintiff has had the opportunity to address the issue and the undersigned still finds that his failure to exhaust cannot be excused, and this matter must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now do so under the BOP's administrative remedy procedure;[9] therefore, his claims should be dismissed with prejudice. See 28 C.F.R. § 542.10, *et seq.*

Nonetheless, even if Plaintiff's legal mail interference claim had not been dismissed for the failure to exhaust, it must be dismissed anyway. Contrary to Plaintiff's claim in his response in opposition that he did in fact suffer an actual injury because his direct appeal, then-pending in the First Circuit Court of Appeals, was denied as a result of Defendant's tampering with his legal mail, a review of Plaintiff's underlying criminal docket,[10] does indicate that attorney Joannie Plaza ("Plaza") was one of a team of thirteen attorneys who defended him on his death penalty case.[11] However, a review of the appellate record[12] of Plaintiff's direct appeal reveals that Plaza

---

[9] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9)**, within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.* (emphasis added).

[10] See United States v. Casey, D.P.R. Case No. 3:05cr277, available on PACER.

[11] Plaintiff was convicted after a jury trial and received a life sentence for the death of an undercover police officer during a drug buy.

was neither former nor subsequent appellate counsel in that appeal, which was already docketed by June 28, 2013 and was well underway by December 9, 2014, the date Plaintiff alleges Defendant interfered with his legal mail. It appears from the lengthy appellate docket that the counsel who were appointed to represent Plaintiff vigorously represented him and presented oral argument on his behalf on November 4, 2015, unimpeded by any December 9, 2014 alleged interference with his legal mail. The decision of the District Court was affirmed on the merits by opinion rendered on June 3, 2016.

## V. Recommendation

For the reasons stated above, the undersigned hereby recommends that Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment [ECF No. 23] be **GRANTED** and Plaintiff's complaint be **DENIED and DISMISSED with prejudice.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of Court is **DIRECTED** to correct the name of the Defendant on the docket from "J. Thompson" to "Jackoline Snoderly" (née Jackoline Thompson).

---

[12] See United States v. Casey, Case No. 13-1839 (1st Cir. 2016), available on PACER.

The Clerk is further directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

DATED: March 28, 2017

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE