**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**LASHAUN CASEY**,

    Plaintiff,

**v.**
                                            **CIVIL ACTION NO. 2:16-CV-94
(BAILEY)**

**JACKOLINE SNODERLY**,

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert [Doc. 40]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on March 28, 2017. In that filing, the magistrate judge recommended that this Court grant defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment [Doc. 23], and deny and dismiss plaintiff's Complaint [Doc.1] with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is timely made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474

U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Farmer v. McBride**, 177 Fed.Appx. 327, 330-331 (4th Cir. 2006); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Plaintiff timely filed his Objections [Doc. 42] on April 5, 2017. Accordingly, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which plaintiff objects. The remainder of the R&R will be reviewed for clear error.

I.   **Background**

Plaintiff Lashaun Casey ("Casey" or "plaintiff"), initiated this action on November 9, 2016, by filing a *pro se* civil rights Complaint against defendant Jackoline Snoderly ("Snoderly" or "defendant") pursuant to **Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics**, 403 U.S. 388 (1971) [Doc. 1].[1] While plaintiff is currently incarcerated at USP Big Sandy in Inez, KY [Doc. 25] and filed this action while incarcerated at USP Lewisburg in Lewisburg, PA, the incidents at the center of Casey's Complaint allegedly occurred while he was incarcerated at USP Hazelton [Doc. 1]. Casey is serving a life sentence for violating: (1) 18 U.S.C. § 2119(3): taking a motor vehicle from a person through force which resulted in death; and (2) 18 U.S.C. § 924(j): unlawful use of a firearm in furtherance of a crime of violence [Doc. 24-1 at 2-3].

In his Complaint, plaintiff raises a claim of "deliberate indifference" to his legal mail

---

[1] This Court notes that the plaintiff filed a separate, similar **Bivens** action on the same day, wherein he alleges additional instances of interference with his legal mail by USP Hazelton staff [United States District Court for the Northern District of West Virginia, Civ. Act. 3:16-CV-154, Judge Gina M. Groh presiding].

2

[Doc. 1-2 at 7]. Substantively, Casey contends that on December 9, 2014, defendant arrived at his Special Housing Unit ("SHU") cell with a piece of purported legal mail from "Joannie Plaza," his lawyer, a federal public defender from the District of Puerto Rico [Id. at 3]. He avers that the envelope was clearly stamped "Legal Mail" with his attorney's name and address at the bottom left corner, and that defendant "knowingly and intentionally started to read" the letter after opening the same in his presence [Id. at 3-4]. Thereafter, he contends that defendant took the letter away because it was written in Spanish, and would review the letter within 24 hours [Id. at 4].

He further contends the letter was never given to him within 24 hours that defendant promised, and that he has yet to ever receive the letter [Id.]. Further, he asserts that he continuously asked defendant about the status of his letter when she visited his cell on her weekly rounds, and that she either denied any knowledge of the letter's whereabouts or did not respond at all [Id. at 4 – 5]. Plaintiff contends that the camera on the unit would support his claims [Id. at 5]. He further contends that his cell mate during that time, Luis Fernandez Lopez, witnessed the alleged acts and attached an affidavit from Lopez which purportedly supports his claim [Id.].[2] Plaintiff also alleges that he has fully exhausted the requisite administrative and legal remedies prior to filing this claim, a topic which will be discussed in greater detail below [Id. at 5-7]. He contends that defendant's actions violated Bureau of Prisons ("BOP") Program Statement 5265.11 and BOP rules and regulations [Doc. 1-2 at 8]. Therefore, he contends that defendant violated his First, Fifth, and Sixth Amendment

---

[2] This Court has carefully reviewed the "Handwritten Affidavit and Declaration by Inmate Luis Fernandez Lopez (Roomate [sic] of Plaintiff)" and finds that it does not support the plaintiff's allegations in the instant Complaint [see Doc. 1-3]. Instead, Lopez's Affidavit supports the facts alleged in Plaintiff's *other* **Bivens** action [Id.; see also 3:16-CV-154].

3

rights, invaded his legal privacy, and caused him to suffer psychological injury, including depression [Id. at 8 – 10].

Defendant, for her part, contends that one of her duties as Correctional Counselor for the Special Housing Unit, where plaintiff was assigned at all times material to the allegations in the Complaint, was to deliver legal mail to inmates assigned to her unit [Doc. 24-2 at 1]. Defendant admits that she remembers the inmate and the incident in question, and that she did, indeed, bring Casey a letter addressed to him and marked as legal mail [Id.]. Per Bureau policy, specifically Program Statement 5800.16, she opened the envelope in the presence of Casey, and did a cursory search for contraband [Id.]. At that time, she noticed that while the envelope was marked as arriving from a courthouse in Puerto Rico, inside of the envelope was a handwritten letter that included a salutation with the letters X and O's [Id.]. Furthermore, the letter was in Spanish, and she can not read in that language [Id. 1-2]. Because she thought this might be a personal letter instead of legal mail, she brought the letter back to the mailroom for their review and any action they thought was appropriate [Id. at 2]. She did not have any other involvement with this letter [Id.]. Thereafter, plaintiff filed this cause of action as noted above.

## II. Legal Standard

### A. Motion to Dismiss:

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' **Bell Atl. Corp. v. Twombly**, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs.  **Edwards v. City of Goldsboro**, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  See **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995).  In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," **Id**. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible."  **Id**. at 1974.

**B.  Summary Judgment:**

Fed. R. Civ. P. 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." **Temkin v. Frederick County Comm'rs**, 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992) (citing **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 247-48

5

(1986)).

However, as the United States Supreme Court noted in ***Anderson***, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." ***Id.*** at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Id.*** at 250; *see also* ***Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing ***Stevens v. Howard D. Johnson Co.***, 181 F.2d 390, 394 (4th Cir. 1950)). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See* ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Id.*** at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

## III. Analysis

In the R&R, Magistrate Judge Seibert recommends that this Court deny and dismiss Casey's Complaint as plaintiff did not fully exhaust his required administrative remedies. In his objections to the R&R, Casey addresses this point and contends that he was precluded from filing an informal resolution because, at all times surrounding the instant wayward mail dispute, he was housed in the Special Housing Unit (SHU) [Doc. 42 at 1]. Accordingly, he was required to "receive [an] informal resolution form from his counselor" [Id.]. However, plaintiff avers that his counselor, also the defendant in this matter, informed him that he did not have to submit an informal resolution [Id. at 1-2]. Therefore, he elected to proceed to the next step of the dispute resolution process. In the alternative, he contends that he, "did attempt informal resolution when he directed [d]efendant/ Counselor Thompson not to read and to submit his opened legal mail to him" [Id. at 2]. Despite plaintiff's objections, this Court agrees that plaintiff did not fully exhaust the requisite administrative remedies.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other [constitutional] wrong." **Hill v. Curcione**, 657 F.3d 116, 124 (2d Cir. 2012) (quoting **Porter v. Nussle**, 534 U.S. 516, 532 (2002)). If the nonmoving party fails

7

to come forward with evidence that shows the exhaustion requirement of the PLRA has been satisfied, there is no genuine issue of material fact standing in the way of summary judgment. *Id.* The PLRA requires "proper exhaustion," and "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." ***Woodford v. Ngo***, 548 U.S. 81, 93 (2006). The administrative process that a prisoner must exhaust is "defined not by the PLRA, but by the prison grievance process itself." ***Jones v. Bock***, 549 U.S. 199, 218 (2007).

The BOP's Administrative Remedy Program is BOP's administrative grievance process for inmates in BOP-operated institutions. 28 C.F.R. § 542.10. The Administrative Remedy Program essentially involves four steps, the first being an informal complaint to staff on the required form, commonly known as a BP-8. 28 C.F.R. §§ 542.10, 542.13. If informal resolution is unsuccessful, the second step is to initiate the formal administrative remedy process by submitting a written Request for Administrative Remedy on a BP-9 form to the Warden. 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, he or she may submit an appeal on a BP-10 to the BOP Regional Office. 28 C.F.R. § 542.15(a). If the inmate is not satisfied with the BOP Regional Office's response, he or she may file a Central Office Administrative Remedy Appeal with BOP's General Counsel, on a form BP-11. *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* If the inmate does not receive a response at any stage of the process, the failure to reply is considered a denial, and the inmate may proceed to the next step. 28 C.F.R. § 542.18.

Despite plaintiff's protests to the contrary, there is no genuine issue of material fact

8

that plaintiff did not properly exhaust his administrative remedies properly. First, as noted by defendant, there is no record that he submitted an informal request to staff (BP-8) as required under 28 C.F.R. § 542.10 *et seq.,* and the Plaintiff did not submit a copy of the informal request and response with his Complaint. As stated by Howard Williams, the Legal Assistant at the Mid-Atlantic Regional Office of the Federal BOP, a review of Casey's administrative remedy history shows that he did not "file an administrative remedy at the institution level regarding problems with his legal mail" [Doc. 24-1 at ¶ 5]. Although plaintiff alleges that he filed a BP-9 at the institution level, the same review of the SENTRY Administrative remedy retrieval shows plaintiff filed neither a BP-8 nor a BP-9 regarding his instant complaints [Id.]. When the plaintiff filed at the Regional and Central Office levels, his administrative remedy was rejected, and he was told he must file a BP-9 with the institution first before filing his appeal [Doc. 1-7 at 4, "You submitted your request or appeal to the wrong level. You should have filed at the institution, regional office, or central office level. . . You must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level."].

Despite plaintiff's objection that his counselor, also the defendant in this matter, informed him that he did not have to submit an informal resolution, the same is unavailing [Doc. 42 at 1-2]. Plaintiff attached copies of the BOP's Inmate's Guide to Administrative Remedies at Federal Prisons, which clearly state that a written informal complaint must first be submitted at an institutional level [Doc. 1-4 at 2]. Despite these instructions, and the instructions set forth in his Administrative Remedy Rejection Notice, plaintiff did not properly exhaust his administrative remedies [Doc. 1-7 at 4]. As there is no genuine issue of material fact that plaintiff has failed to exhaust his claims, plaintiff's suit and objections

9

must be dismissed.

Magistrate Judge Seibert also recommends that Casey's Complaint should be dismissed because the letter at issue was from attorney Joannie Plaza, and, per a records check, Plaza was not a member of Casey's thirteen attorney legal team on his direct death penalty appeal [Doc. 40 at 14-15]. In his Objections, Casey contends that, "[a]ttorney Plaza provided [plaintiff] with consultation on the appeal and this was crucial to the preparation of his direct appeal that was being perfected. The development of the issues on appeal were the basis of the letters that were withheld from [plaintiff]" [Doc. 42 at 2]. However, plaintiff does not offer a shred of evidence to support his claim that attorney Plaza in some way provided consultation on the appeal, nor why the "XOXO" salutation on the letter was not personal, instead of legal, mail. Accordingly, plaintiff's objections on this point are hereby ordered dismissed.

## IV.     Conclusion

Upon careful review of the record, this Court hereby **ADOPTS** the magistrate judge's Report and Recommendation **[Doc. 40]** for the reasons stated above. The plaintiff's Objections **[Doc. 42]** are **OVERRULED**. Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment **[Doc. 23]** is **GRANTED**. Accordingly, this matter is **ORDERED STRICKEN** from the active docket of this Court, and the Clerk is hereby **DIRECTED** to enter judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* plaintiff.

**DATED:** May 8, 2017.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE